Jonathan Weiss – California State Bar #143895
Email:  jw@lojw.com
LAW OFFICE OF JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436
Telephone:  (310) 558-0404; Facsimile: (310) 558-0100

Attorneys for Plaintiff, James Elias

[Additional Attorneys listed on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JAMES ELIAS, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSHUA R. BRONSTEIN, an individual; DANIELS NORELLI SCULLY & CECERE, P.C., a New York corporation; CACH, LLC, a Colorado limited liability company; SQUARETWO FINANCIAL CORPORATION, a Delaware corporation; GE CAPITAL RETAIL BANK; a federally-chartered savings association, and DOES 3-10, inclusive,<br><br>    Defendants. | Case No.:  CV 13-7231 GHK (RZx)<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>I.    VIOLATIONS OF FDCPA [15 U.S.C. §§ 1692, ET SEQ.]<br><br>II.   VIOLATIONS OF CFDCPA [CAL. CIV. CODE §§ 1788, ET SEQ.]<br><br>III.  UNFAIR COMPETITION LAW [CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.]<br><br>DEMAND FOR JURY TRIAL |

1.    Defendant GE Capital Retail Bank solicits credit card customers through a vast network of retail stores for whom it issues credit cards.  In derogation of statute, common law, and fair business practices, GE Capital Retail Bank and the retail stores offer little or no protection against identity theft.

---

2.     When credit card debt proves uncollectible from identity thieves – and from those whose identities they have stolen – GE Capital Retail Bank sells that debt along with other debt that may or may not be legally collectible.

3.     Defendants SquareTwo Financial Services and CACH, LLC, buy billions of dollars of bundled credit card debt – including identity theft debt – that they know or should know is legally uncollectible.  They then proceed to dun members of the public who have been victims of identity theft, predictably injuring them.

4.     In asserting claims under the federal Fair Debt Collection Practices Act (15 U.S.C. §§ 1692, et. seq. ("FDCPA")), California's Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code §§ 1788-1788.32 ("CFDCPA")), and California's Unfair Competition Law (Bus. & Prof. Code, §§ 17200, et seq. ("UCL")), Plaintiff alleges the following based on his own knowledge and based on information and belief from the investigation to date of his counsel.

## JURISDICTION AND VENUE

5.     This court has federal question jurisdiction pursuant to 15 U.S.C. § 1692k, subdivision (d), and 28 U.S.C. § 1331.

6.     This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

7.     This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, subdivision (b), as the acts and transactions that give rise to this action occurred, in substantial part, in this District.

9.     Venue is also proper in this District because the Plaintiff resides in this district and the Defendants transact business in this district.

\ \ \

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

## PARTIES

### *Plaintiff*

10.     Plaintiff, **James Elias** is, and at all times herein mentioned was, a California citizen residing in Sherman Oaks, Los Angeles County, California.

### *Credit-Issuer Defendant*

11.     Defendant **GE Capital Retail Bank ("GECRB")**, formerly sued as DOE 2, is a federally-chartered savings association.

12.     Defendant **GE Capital Retail Bank ("GECRB")**, formerly sued as DOE 2, is a federally-chartered savings association.

13.     GECRB claims to be the world's largest provider of retail credit financing.

14.     For calendar year 2013, GECRB reported "Loans to individuals for household, family, and other personal expenditures (i.e., consumer loans)" through "Credit cards" amounting to $33,048,836,000 (over 33 billion dollars).

15.     For calendar year 2013, GECRB reported "Charge-offs" on "Loans to individuals for household, family, and other personal expenditures" through "Credit cards" amounting to $1,524,828,000 (over 1.5 billion dollars).

16.     For calendar year 2013, GECRB reported "Recoveries" on "Loans to individuals for household, family, and other personal expenditures" through "Credit cards" amounting to $262,869,000 (over a quarter billion dollars).

### *Debt Collector Defendants*

17.     Defendant **Joshua R. Bronstein ("Bronstein")** is, and at all times relevant herein was, an individual licensed by the State of New York to practice law.

18.     Defendant **Daniels Norelli Scully & Cecere, P.C. ("DNSC")** is, and at all times relevant herein was, a law firm, located One Old Country Road, Suite LL5, Carle Place, New York 11514.

19.    At relevant times herein Bronstein was a member of DNSC.

20.    Defendant **CACH, LLC ("CACH")** is, and at all times relevant herein, was, a Colorado limited liability company.

21.    Defendant SquareTwo Financial Corporation ("SquareTwo"), formerly sued as DOE 1, is and at all times relevant herein was, a Delaware Corporation.

22.    CACH and SquareTwo Interrelationship.  CACH is a puppet and fiction set up to avoid liabilities, including but not limited to liability under consumer protection statutes such as the FDCPA and the CFDCPA.  *See* 15 U.S.C. 1692k(a)(2)(B) (Class action FDCPA statutory damages limited to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector.").

23.    "CACH, LLC … is a wholly-owned subsidiary of SquareTwo Financial Corporation, the equity of which is not publicly traded." *See* Defendant CACH's Certification and Notice of Interested Parties herein, filed 11/26/13.

24.    CACH has no employees and has had none for years.  Instead, CACH acts through SquareTwo's employees or agents.

25.    CACH and SquareTwo share common directors and officers.

26.    The managers of CACH are, according to filings with various secretaries of state, Paul A. Larkins and P. Scott Lowery.

27.    P. Scott Lowery is also the founder and Chairman of the Board of SquareTwo; Paul A. Larkins is SquareTwo's President and Chief Executive Officer.

28.    SquareTwo is responsible for raising capital for making all decisions relating to the acquisition of upwards of $3 billion of debt portfolios annually – some of it in the name of CACH.

29.    SquareTwo, sometimes in the name of CACH, typically hires, provides debt files, pays court costs and fees, and obtains witnesses for accounts placed with its network of collection attorneys who are nominally collecting in the name of CACH.

30.    CACH transfers assets to its parent SQUARETWO, but CACH does

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZx)

1   not receive reasonably equivalent value of assets transferred.

2        31.    SQUARETWO assigns liabilities to CACH, but SQUARETWO does

3   not incur reasonably equivalent value of liabilities transferred.

4        32.    "Comparing the assets and liabilities sides of CACH's balance sheets,

5   one can reasonably infer that CACH did not receive 'reasonably equivalent value'

6   from SquareTwo in exchange for the obligations incurred. *Martinez v. CACH, LLC,*

7   2011 U.S. Dist. LEXIS 157414, at *9, 2011 WL 10730991 (S.D. Cal. Oct. 17, 2011)

8   (S.D. Cal. Oct. 17, 2011) (allowing credit card plaintiff to proceed against

9   SquareTwo based on allegations of fraudulent transfer under California Civil Code

10   section 3439.04).[1]

11        33.    Honoring Defendants' corporate artifice as alleged herein (*see* ¶¶ 22-31

12   above) would inequitably frustrate public policy by immunizing Defendants from

13   damages meant to ensure their compliance with the FDCPA.

14        34.    Apart from the alter ego theory, SquareTwo is liable for its agents'

15   actions as alleged herein. *See Morris v. CACH, LLC*, 2013 U.S. Dist. LEXIS

16   152362, at *8, 2013 WL 5738047 (D. Nev. Oct. 22, 2013) ("*Morris*") holding

17   "Plaintiff has adequately alleged a principal/agent relationship to impute liability

18   under the FDCPA to SquareTwo Financial"). *Morris* cited *Clark v. Capital Credit*

19   *& Collection Servs.*, 460 F.3d 1162, 1173 (9th. Cir. 2006), (principal liable for agent

20   under FDCPA but not vice versa "*see Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d

21   1507, 1516 (9th Cir. 1994) (holding that 'Congress intended the actions of an

22   attorney to be imputed to the client on whose behalf they are taken')….").

---

25   [1] The allegations in the *Martinez* Second Amended Complaint that
26   apparently supported the "actual fraudulent transfer" and "constructive
27   fraudulent transfer" counts (¶¶ 62-65 and 72-75, respectively) were filed under
     seal – thereby concealing the underlying facts from the public and this Plaintiff.

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

FIRST AMENDED COMPLAINT       CASE NO. CV13-07231-GHK (RZx)

# **GENERAL ALLEGATIONS**

35.     Unless otherwise required by the context of the allegation, references to Defendant(s) includes their parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, administrators, associates, alter egos, joint ventures, joint venturers, related or affiliated entities, partners, lenders, franchisors, franchisees, owners, managers, contractors, agents, servants, employees, assistants, and/or consultants.

36.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 3 through 10 are unknown to Plaintiff, who therefore sues Defendants by fictitious names and will amend this Complaint to show their true names and capacities when ascertained.

37.     Each of the Doe Defendants is responsible in some manner for the injuries, damages, and/or violations herein alleged.

38.     Each Defendant when acting for the other was acting within the course, scope, and authority of said position.

39.     Each Defendant, when acting as the agent of another Defendant, carried out a joint scheme, business plan or policy in all respects pertinent hereto, making the acts of each Defendant, when acting as the agent of another Defendant, legally attributable to the other Defendant.

40.     Each Defendant, when acting as a principal, caused, knew of, and/or should have known of the wrongful actions of each and every one of its agents, servants, employees, assistants, and/or consultants.

41.     Each Defendant, when acting as a principal, ratified the wrongful actions of each and every one of its agents, servants, employees, assistants, and/or consultants.

\ \ \

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZx)

*The Debt Sale Business*

42.   "As providers of consumer credit, banks are in the business of lending money to be repaid with interest.  ….  A certain percentage of the loans that banks make go unpaid."  Statement of the Office of the Comptroller of the Currency (OCC) Provided to the Subcommittee on Financial Institutions and Consumer Protection Senate Committee on Banking, Housing, and Urban Affairs, *"Shining a Light on the Consumer Debt Industry"* (July 17, 2013) *available at* http://www.occ.treas.gov/news-issuances/congressional-testimony/2013/pub-test-2013-116-oral.pdf (last accessed Feb. 26, 2014) (discussing bank sale of debt without adequate controls) ("*Shining a Light*"), p. 2.

43.   "Debt collection may take several forms, including continued efforts by the bank to collect it on its own, the hiring of a third party to collect the debt on its behalf, or the sale of the debt to an unaffiliated third party, which generates a partial recovery. *Shining a Light*, p. 2.

44.   "The majority of bank debt sales activity is concentrated among the 19 largest banking organizations, with the five largest making up about 82 percent of the annual total average sales of debt.  On average, the 19 largest banking organizations have sold about $37 billion in charged-off debt sales in each of the past few years. *Shining a Light*, p. 3.

45.   "To provide some context to this number, the total retail credit portfolio for these 19 banks averaged $2.5 trillion each of the last five years.  During that period, their combined annual charge-offs on these portfolios averaged $93.2 billion." *Shining a Light*, p. 3.

46.   "The vast majority of debt charged off by these large financial institutions and sold to third party debt collectors involves delinquent debt related to credit cards …." *Shining a Light*, p. 3.

47.   "The value of debt sold to third party debt collectors … varies significantly based on the age of the debt, the completeness and quality of records

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436

related to the debt, previous work done to collect the debt, and the amount of debt being sold overall (supply)." *Shining a Light*, p. 3.

48.    "In the aftermath of the recent financial crisis, approximately 30 million Americans have one or more debts in collection.  There are over 4,000 debt collection and debt purchasing companies, and in 2012 alone, consumers filed over 125,000 complaints about third-party debt and in-house collectors.  Reported complaints include collectors falsely representing the character, amount, or status of a debt; making repeated or continuous calls; falsely threatening to sue consumers; and falsely threatening to arrest consumers or seize their property."  113th Congress, Senate Banking, Housing, and Urban Affairs Committee pre-publication hearing materials, Subcommittee on Financial Institutions and Consumer Protection, CIS S 24-20130717-01.

49.    SquareTwo claims it "is a leading purchaser of charged-off consumer and commercial receivables in the accounts receivable management industry." SquareTwo's March 1, 2013 Form 10-K for fiscal year ending December 31, 2012 ("SquareTwo 10K").

50.    SquareTwo claims that its "primary business is the acquisition, management and collection of charged-off consumer and commercial accounts receivable that [it] purchase[s] from financial institutions, finance and leasing companies, and other issuers in the U.S. and Canada."  (SquareTwo 10K)

51.    SquareTwo claims to operate its "domestic charged-off receivables management business through a series of subsidiary entities, including CACH, LLC, . . . .  These entities purchase charged off consumer receivables and place them with the United Network for collection."   (SquareTwo 10K)

\ \ \

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZx)

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436

### *The Identity Theft Problem*

52.     In 2003, the FTC reported that 27.3 million Americans had been the victims of identity theft.

53.     In 2012, identity theft was the top complaint received by the FTC (18 percent of complaints).   The next highest category of complaints was about debt collection (10 percent).

54.     Identity fraud affected 5.26% of U.S. adults in 2012 – a year that saw "dramatic jumps in the two most severe fraud types, new account fraud (NAF) and account takeover fraud (ATF)."  Javelin Strategy & Research, *2013 Identity Fraud Report:  Data Breaches Becoming a Treasure Trove for Fraudsters*, Selected Key Findings, *available at* https://www.javelinstrategy.com/brochure/276 (last accessed Feb. 26, 2014).

55.     Plaintiff was apparently the victim of new account fraud (NAF).  *See* ¶¶ 84-99 below.

### *GECRB Makes Minimal, if any, Efforts to Keep from Selling Legally Uncollectable Credit Card Originated Through Identity Theft to Debt Buyers*

56.     "As the originators of credit card loans, banks are at the headwaters of the rivers of bad debt that flow into the collections industry."  Jeff Horwitz, *Bank of America Sold Card Debts to Collectors Despite Faulty Records*, Am. Banker (Mar. 29, 2012, 6:31 p.m., ET) *available at* http://www.americanbanker.com/issues/177_62/bofa-credit-cards-collections-debts-faulty-records-1047992-1.html?zkPrintable=1&nopagination=1 ("*Faulty Records*") (last accessed Feb. 26, 2014).

57.     "[W]hen banks sell batches of accounts without sufficiently scrubbing them of errors and discrepancies" "[s]uch oversights are drawing into collections quagmires an unknown number of consumers who owe nothing, or for whom debt records are incomplete or nonexistent."  Maria Aspan, *Borrower Beware: B of A*

*Customer Repaid Her Bill Yet Faced a Collections Nightmare*, Am. Banker (Mar. 29, 2012, 5:47 p.m., ET) *available at* http://www.americanbanker.com/issues/177_62/bofa-credit-cards-debt-collections-delinquent-robosigning-1047991-1.html (last accessed Feb. 26, 2014).

58.     "In a 2009 study of the debt collection industry, the [Federal Trade] Commission concluded that the 'most significant change in the debt collection business in recent years has been the advent and growth of debt buying.' 'Debt buying' refers to the sale of debt by creditors or other debt owners to buyers that then attempt to collect the debt or sell it to other buyers. ...." Federal Trade Commission, *The Structure and Practice of the Debt Buying Industry* (January 2013) at p. i., *available at* http://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf (last accessed Feb. 26, 2014) ("Debt Buying").

59.     "The FTC receives more consumer complaints about debt collectors, including debt buyers, than about any other single industry. Many of these complaints appear to have their origins in the quantity and quality of information that collectors have about debts." *Id.*

60.     In its 2009 study, the Commission expressed concern that debt collectors, including debt buyers, may have insufficient or inaccurate information when they collect on debts, which may result in collectors seeking to recover from the wrong consumer or recover the wrong amount." *Id.*

61.     Because legally uncollectible debt is endemic in the flow forward agreements, banks typically give "debt buyers some refund, or 'put-back,' rights" extending "to debts that were the result of fraud or whose balances included amounts attributable to fraud." Debt Buying, at p. 25.

62.     When selling credit card debt, GECRB uses a forward flow agreement giving debt collectors put-back rights for what Defendants label "Non-conforming Receivables," which include credit card debt that is legally uncollectible because of:

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZx)

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

a.      Being subject to a bankruptcy stay;

b.      Being discharged in bankruptcy;

c.      Having been incurred by persons whose later death left no legal recourse for collection of that debt;

d.      Having been incurred by persons fraudulently misrepresenting themselves or their authority, i.e., "Identity Theft Debt"; and/or

e.      The running of statutes of limitation and/or repose.

63.     GECRB's forward flow agreement provides a transaction codes for Non-conforming Receivables.  The code for fraud is 0426; the code for death is 0417; there are several codes for bankruptcy.

64.     GECRB's forward flow agreement discourages debt buyers from obtaining sufficient information to ensure that debt is *not* a Non-conforming Receivable by charging a cost penalty for obtaining relevant "Account Documents."

### *CACH Recklessly Buys Legally Uncollectible Debt*

65.     In this case and in others, "[t]he prospect [that the bank] was selling unreliable credit card debts did not deter CACH from buying them." *Faulty Records*, *supra*.

66.     In 2010 and 2011, CACH exhibited a pattern and practice of carelessly buying greatly discounted debt – "1.8 cents on the dollar" – from at least one bank (Bank of America), without "'representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever' about the accuracy or completeness of the debts' records…." *Faulty Records*, *supra*, quoting CACH, LLC forward flow agreement with Bank of America, dated April 14, 2010.  "The pricing reflected the accounts' questionable quality …." *Id.*  "[O]ther banks' sales agreements suggest Bank of America's standards are emblematic of wider industry practice …." *Id.*  "Other banks' debt sale contracts acknowledge potentially large holes in their records as well." *Id.*  "[R]ecords declared unreliable yet sold to CACH

were used to file thousands of lawsuits against consumers, according to a review of hundreds of cases in the state courts where collection suits are typically filed.  The overwhelming majority of cases end in default judgments, which are awarded to creditors when borrowers don't show up to contest the claims made against them." *Faulty Records*, *supra*.

67.    CACH does not buy sufficient records along with the debt in order to assure that the debt is *not* legally uncollectible.   Instead, it purchases only mere segments of data which typically do not amount to more than an electronic spreadsheet summarizing minimal information about an account.

### *FDCPA Policy*

68.    Congress designed the FDCPA to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."  Sen. Comm. on Banking, Housing & Urban Aff., S. Rep. No. 95-382 (95th Cong. 1st Sess.) p. 4 ("Senate Report").

69.    In enacting the FDCPA, Congress sought to protect debtors against an industry that it viewed as having little or no market incentive to treat debtors fairly, and a strong incentive to collect by any means.  Senate Report, p. 2 (noting that "[u]nlike creditors, who generally are restrained by the desire to protect their good will," third-party debt collectors "are likely to have no future contact with the consumer and are often unconcerned with the consumer's opinion of them").

70.    "The FDCPA imposes strict liability on creditors, including liability 'for violations that are not knowing or intentional.'  [Citation.]."  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. Mont. 2011).

### *OCC Debt Collection Standards*

71.    "[T]he Comptroller specifically raised concerns with debt collection in May 2012 when he noted that the OCC has 'seen institutions outsourcing such

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

functions as debt collection but not taking adequate care to ensure that the third-party contracted to perform those functions follows the laws and regulations governing them.'" *Shining a Light*, *supra*, p. 5.

72.   "The OCC expects all national banks and federal savings associations to have policies and procedures in place to manage their debt collection activities effectively.  This includes managing the operational and reputational risks, and complying with all relevant consumer protection laws." *Shining a Light*, p. 4.

73.   "In seeking to recover their losses, banks should exercise particular care when they choose to sell that debt to third party debt collectors." *Id.* at 10.

74.   "When banks sell debt, the agency expects them to have policies, procedures, and practices that result in the third party treating customers fairly and consistently with the expectations of the banks and regulators." *Id.* at 4.

75.   "The OCC has also published guidance to banks … which … is also relevant to their relationships with buyers of their debt (debt sales relationships)." *Id.* at 4-5.

76.   The Appendix to the OCC's *Shining a Light* statement (*see* ¶ 42 above), gives "guidance on the due diligence and ongoing monitoring of third parties to which banks sell consumer debt."  OCC Bulletin 2013-29.

77.   The OCC Appendix guides banks to "[o]utline accounts that should not be sold.  Items for consideration include:  SCRA [Servicemember's Civil Relief Act]; minors (date of birth); settled; deceased with no remaining responsible party; accounts in disaster areas; pending bankruptcy; fraud; accounts close to statute of limitations; accounts lacking clear title; accounts lacking proof of right-to-cure or notice of intent-to-sell letters; balances comprised largely of interest and fees; cease and desist accounts; debts where payments were recently received; and, accounts in ongoing loss mitigation programs (short sales, deed in lieu; etc.)." *Shining a Light*, pp. 11-12.

78.   The OCC Appendix also guides banks to conduct "onsite inspection of

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436

debt buying entity" and consider:   "Regulatory and compliance – FDCPA, SCRA, FCRA [Fair Credit Reporting Act], Telephone Consumer Protection Act, BK [Bankruptcy], Fraud, and Deceased …." *Id.* at 12-13.

79.    The OCC Appendix also tells banks that "Ongoing due diligence should consider: … "volume and reason of repurchases." *Id.* at 13.

80.    The OCC Appendix also guides banks toward a "quality control function that evaluates debt sales prior to the sale.  This function should evaluate 'data scrubs' to validate and ensure account data is complete and accurate and the account data is updated from the system of record. ….  [Q]uality control should assess the reason accounts are repurchased after a debt sale is completed, and determine if additional controls are required."

81.    GECRB does not follow the practices outlined in the OCC Appendix.

82.    Emblematic of the bad debt sale problem is OCC's September 18, 2013 consent decree with JPMorgan Chase Bank, N.A. , JPMorgan Bank and Trust Company, N.A., and Chase Bank USA, N.A. ("Chase Bank").  Concluding an investigation prompted by a whistleblower, "OCC identified unsafe or unsound practices in connection with (i) the Bank's sworn document and collections litigation practices and (ii) the Bank's efforts to comply with the Servicemembers Civil Relief Act ('SCRA')."  The OCC found that Chase:

    a.    Filed or caused to be filed in courts affidavits executed by its employees or employees of third-party service providers making various assertions in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

    b.    In some instances, filed or caused to be filed in courts inaccurate sworn documents that resulted in obtaining judgments with financial errors in favor of the Bank;

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZx)

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436

c.     Filed or caused to be filed in courts numerous affidavits that were not properly notarized, including those not signed or affirmed in the presence of a notary, where required;

d.     Failed to have in place effective policies and procedures across the Bank to ensure compliance with the SCRA;

e.     Failed to devote sufficient financial, staffing and managerial resources to ensure proper administration of its sworn document and Collections Litigation processes;

f.     Failed to devote to its sworn document and Collections Litigation processes adequate internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and

g.     Failed to sufficiently oversee outside counsel and other third-party providers handling sworn document and Collections Litigation services.

83.     Many, if not all, of the infirmities found at Chase Bank are present at GECRB.

### *Chronology*

84.     On *August 10, 2011* Michael Alexander Threatte (aka "Michael Alexander," aka "Michael Threatte") ("Threatte") of ▮▮▮▮▮▮▮, Lake Forest, Illinois, rented a mailbox with the address 16209 Victory Boulevard, #181, Van Nuys, California  91406 (the "Van Nuys address").

85.     On about *April 14, 2012*, someone – but neither Plaintiff nor anyone acting with his authorization – applied for a GECRB credit account for Ultra Diamonds, a merchant in Chicago, Illinois:

a.     The primary applicant was listed as James E. Elias, ▮▮▮▮▮▮, Sherman Oaks, California.

b.     The co-applicant was listed as Michael Alexander, ▮▮▮▮▮▮, Lake Forest, Illinois.

FIRST AMENDED COMPLAINT        CASE NO. CV13-07231-GHK (RZx)

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

c.     Plaintiff had no knowledge of the application; he did not and does not know Mr. Alexander/Threatte; he did not authorize Mr. Alexander/Threatte to make the application.

86.     On *April 14, 2012* GECRB made a credit inquiry to TransUnion concerning Plaintiff.  At that time, Plaintiff's home address was (as it remains) on ██████, in Sherman Oaks, California (the "Sherman Oaks address").

87.     On about *April 14, 2012*, in response to the above-alleged application, GECRB opened credit card account number ████████0731 ("the '0731 account"), with the Sherman Oaks address as the billing address.

88.     On about *April 14, 2012*, someone – but neither Plaintiff nor anyone acting with his authorization – charged $1891.98 and $600 on the '0731 account.

89.     On about *April 16, 2012*, someone – but neither Plaintiff nor anyone acting with his authorization – via Internet through IP address 75.149.84.33 located in Illinois – changed the '0731 account's billing address from the Sherman Oaks address to the Van Nuys address. The address change was completed before any physical card had been issued on the account so that the physical credit card was sent to an address other than the Plaintiff's.

90.     On about *April 23, 2012*, someone – but neither Plaintiff nor anyone acting with his authorization – via Internet through IP address 75.149.84.33 located in Illinois – applied for a GECRB credit account for ABT Television & Appliance, a merchant in Glenview, Illinois:

a.     The primary applicant was listed as James E. Elias, ██████ , Sherman Oaks, California.

b.     The co-applicant was listed as Michael Alexander, █████ ██████, Lake Forest, Illinois.

c.     Plaintiff had no knowledge of the application; he did not and does not know Mr. Alexander/Threatte; he did not authorize Mr. Alexander/Threatte to make the application.

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZx)

91.     On *April 23, 2012*, GECRB made a credit inquiry to TransUnion concerning Plaintiff.

92.     On or after *April 23, 2012*, in response to the above-alleged application, GECRB rejected the above-alleged application.

93.     On *April 30, 2012*, GECRB sent a letter to Plaintiff, at the Sherman Oaks address, refusing a credit application for ABT Television & Appliance ("Thank you for your application for a GECRB ABT Television & Appliance account.  We regret that we are unable to approve your instant credit request … unverifiable application information.").

94.     On about *April 30, 2012*, Plaintiff contacted credit agencies (including, at least, TransUnion and Experian) to report the apparent theft of his identity.

95.     On *April 30, 2012*, TransUnion responded to Plaintiff, at the Sherman Oaks address ("We have received a request and added to your credit report an Initial Fraud Alert.").

96.     On *May 1, 2012*, Experian wrote to Plaintiff, at the Sherman Oaks address ("We have added an Initial Security Alert to your credit file ….").

97.     On about *May 5, 2012*, Plaintiff wrote to GECRB in response to its April 30, 2012 letter to him.  He stated, "I have never applied for credit from the GE Capital Retail Bank.  The application is a fraud.  This is the second attempt to use my identity to obtain credit.  The Credit Agencies have been notified and an initial Fraud Alert has been placed on my file with the three major agencies."

98.     On *May 6, 2012*, someone – but not Plaintiff or anyone acting with his authorization – charged $2000 on the '0731 account.

99.     From about *April 24, 2012* through about *May 22, 2013*, GECRB mailed statements on the '0731 account to the Van Nuys address, addressed to James E. Elias (on the first address line) and Michael Alexander (on the second address line). None of these were sent to Plaintiff's address.

100.     On *May 22, 2013*, GECRB sold the '0731 account to CACH, LLC.

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

101.   On about *August 2, 2013*, Defendant DNSC sent an initial validation letter addressed to Plaintiff at the Van Nuys address.  It showed the initial creditor GE Money Retail Bank, current creditor CACH, LLC, account number ██████████0731, and the "[C]urrent [B]alance:  $5,255.11."

102.   On *August 6, 2013*, Defendant DNSC made a credit inquiry to TransUnion concerning Plaintiff, causing his credit report to reflect "Collection services."

103.   On about *August 8, 2013*, Defendants contacted Plaintiff by phone in an attempt to collect on the purported debt.

104.   On about *August 8, 2013*, Defendant Bronstein emailed Plaintiff a letter (Exhibit A hereto), stating, *inter alia*, "Please be advised that the above referenced account ['0731] has a balance left to be paid of $5,255.11."

## COUNT I

### Violations of FDCPA

### (Against Defendants Bronstein, DNSC, CACH, SquareTwo, and Does 3-6)

105.   Plaintiff incorporates by reference the foregoing allegations. Each of Defendants Bronstein, DNSC, CACH, and SquareTwo is a "debt collector" as defined by 15 U.S.C. § 1692a, subdivision (6).

106.   The debt that Defendants sought to collect from Plaintiff is a consumer debt, as defined by 15 U.S.C. § 1692a, subdivision (5).

107.   Defendants attempted to collect this debt from Plaintiff, which was a "communication" as defined by 15 U.S.C. § 1692a, subdivision (2).

108.   Section 1692e of the FDCPA concerns false or misleading representations in connection with the collection of any debt.  Thereunder, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." (15 U.S.C. § 1692e)  Within the non-exclusive list of prohibited "false, deceptive, or misleading representation or means"

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436

is "[t]he false representation of … the character, amount, or legal status of any debt …." (15 U.S.C. § 1692e(2)(A).)

109. Section 1692g of the FDCPA concerns the validation of debts. Under this law, a debt collector wishing to collect on a debt must – either in the initial communication or within five days thereafter – provide the alleged debtor with a validation letter containing all of the following written information:

> a.     "the amount of the debt" (15 U.S.C. § 1692g, subd. (a)(1));

> b.     "the name of the creditor to whom the debt is owed" (15 U.S.C. § 1692g, subd. (a)(2));

> c.     "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector" (15 U.S.C. § 1692g, subd. (a)(3));

> d.     "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector" (15 U.S.C. § 1692g, subd. (a)(4)); and

> e.     "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor" (15 U.S.C. § 1692g, subd. (a)(5)).

110. Defendants' violations of the FDCPA, include:

> a.     dunning the wrong individual; and

> b.     failing to timely provide the statements required by Section 809 of the FDCPA (15 U.S.C. § 1692g, subds. (a)(3)-(a)(5)).

111. The failure to comply with the FDCPA procedures and dunning of a

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

1  debt have caused the Plaintiff actual damages, including inconvenience,
2  embarrassment, emotional distress, and adversely affected his credit standing.

3      112.   As a result of the above violations of the FDCPA, Defendants named in
4  this Count, and each of them, are liable for actual and statutory damages, costs, and
5  attorney's fees.

7                          **COUNT II**
8                   **Violations of CFDCPA**
9  **(Against Defendants Bronstein, DNSC, CACH, SquareTwo, and Does 3-6)**

10     113.   Plaintiff incorporates by reference the foregoing allegations.

11     114.   Defendants' acts and omissions violated the CFDCPA, including, but
12 not limited to California Civil Code section 1788.17, which incorporates several of
13 the provisions of the FDCPA.

14     115.   Defendants' violations of California Civil Code section 1788.17,
15 include:

16          a.      making a "false, deceptive, or misleading representation about
17     "the character, amount, or legal status" of the purported debt (15 U.S.C. §
18     1692e(2)(A)); and

19          b.      failing to provide – either in the initial communication or within
20     five days thereafter – the information required by 15 U.S.C. § 1692g, subd.
21     (a).

22     116.   Defendants' violations of the Rosenthal Act were willful and knowing,
23 thereby entitling Plaintiff to statutory damages pursuant to Civil Code § 1788.30,
24 subdivision (b).

25     117.   The failure to comply with the FDCPA procedures and dunning of a
26 debt have caused the Plaintiff actual damages, including inconvenience,
27 embarrassment, emotional distress, and adversely affected his credit standing.

28     118.   As a proximate result of each and every violation of the Rosenthal Act

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZX)

1  committed by Defendants named in this Count, Plaintiff is entitled to actual damages

2  pursuant to California Civil Code section 1788.30, subdivision (a); statutory

3  damages in an amount up to $1,000.00 pursuant to California Civil Code section

4  1788.30(b); and, reasonable attorney's fees and costs pursuant to California Civil

5  Code § 1788.30(c) from Defendants.

6

7  ## COUNT III

8  **Unfair Competition Law (Cal. Bus. & Profs. Code, § 17200, et seq.)**

9  **(Against Defendants GECRB, SQUARETWO, CACH and Does 7-10)**

10     119.   Plaintiff incorporates by reference the foregoing allegations.

11     120.   Plaintiff brings this claim individually, on behalf of the general public

12  of the State of California, as well as on behalf of all others similarly situated.

13     121.   "Whether or not consumers owe and are liable for the debts collectors

14  are attempting to recover, unlawful collection practices can cause significant

15  reputational damage, invade personal privacy, and inflict emotional distress."

16  Defining Larger Participants of the Consumer Debt Collection Market, 77 Fed. Reg.

17  65775, 65777 (Oct. 31, 2012) (to be codified at 12 C.F.R. pt. 1090) (asserting CFPB

18  authority over debt collectors).

19     122.   The OCC, the Consumer Financial Protection Bureau (CFPB), and the

20  FTC all point to a fundamental underlying issue with the abusive collection mills:

21  banks sell debt portfolios without sufficient regard for the quality of the accounts

22  sold or the practices of the collectors to whom debt portfolios are sold.

23     123.   By trafficking in legally uncollectible debt as alleged herein,

24  Defendants violated Business and Professions Code sections 17200, et seq. (the

25  California Unfair Competition Law) in the following regards:

26          a.    ***Unfair***.  Defendants "cause[] or [are] likely to cause substantial

27          injury to consumers which is not reasonably avoidable by consumers

28          themselves and not outweighed by countervailing benefits to consumers or to

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZx)

competition …." 15 U.S.C. § 45(n) (defining "unfair" practices under section 5 of the Federal Trade Commission Act); see *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 185 (Cal. 1999) ("[W]e must devise a more precise test for determining what is unfair under the unfair competition law. To do so, we may turn for guidance to the jurisprudence arising under the 'parallel' … section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(a)) (section 5)."

     b.    ***Unlawful***. Defendant GECRB violated 12 C.F.R. 7.40008, which makes it unlawful for a "national bank," such as GECRB, to "engage in unfair … practices within the meaning of section 5 of the Federal Trade Commission Act" as alleged immediately above.

     c.    ***Unlawful***. Defendants violated California Civil Code section 1714, subdivision (a), which makes everyone responsible for injury occasioned by the want of ordinary care or skill in the management of his or her property or person

     d.    ***Unlawful***. Defendant GECRB violated 15 U.S.C. § 1681m (e) by failing to establish and maintain adequate "red flag guidelines" and § 1681m (f) by selling debt caused by identity theft.

     e.    ***Unlawful***. Defendant GECRB violated 16 C.F.R. § 681.1 by failing to establish and maintain an adequate red flag program to address identity theft, detecting red flags and responding to red flags detected.

     124.   Defendants' unfair and unlawful acts and practices harmed Plaintiff and those similarly situated by subjecting them to:

     a.    being dunned for debt that is not theirs;

     b.    being subject to default judgments;

     c.    unnecessary inquiries to credit agencies;

     d.    negative credit reports by collectors (thereby increasing their

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

FIRST AMENDED COMPLAINT         CASE NO. CV13-07231-GHK (RZx)

borrowing costs);

    e.    making payments for debt that they wrongly believed was theirs;

    f.    being caused to retain attorneys to respond to dunning and/or clean up their credit reports;

    g.    wasting their time on unwarranted communications from debt collectors; and/or

    h.    intrusions on their seclusion.

125.    Defendants' unfair and unlawful business practices described herein present a continuing threat to Plaintiff, competitors acting lawfully, and members of the public unless enjoined or restrained by the Court and caused to disgorge their ill-gotten gain.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants as follows:

### COUNT I

**Violations of FDCPA**

**(Against Defendants Bronstein, DNSC, CACH, SquareTwo, and Does 3-6)**

1.    Actual damages (15 U.S.C. § 1692k, subd. (a)(1));

2.    Statutory damages (15 U.S.C. § 1692k, subd. (a)(2)(A));

3.    Costs of litigation and reasonable attorneys' fees (15 U.S.C. § 1692k, subd. (a)(3)); and

4.    Such other and further relief as may be just and proper.

\ \ \

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California 90064-4436

## COUNT II

### Violations of CFDCPA

### (Against Defendants Bronstein, DNSC, CACH, SquareTwo, and Does 3-6)

1. Actual damages (Cal. Civ. Code §§ 1788.30, subd. (a));

2. Statutory damages (Cal. Civ. Code §§ 1788.30, subd. (b));

3. Treble damages (Cal. Civ. Code § 3345);

4. Costs of litigation and reasonable attorneys' fees (Cal. Civ. Code §§ 1788.30, subd. (c)); and

5. Such other and further relief as may be just and proper.

## COUNT III

### Unfair Competition Law (Cal. Bus. & Profs. Code, § 17200, et seq.)

### (Against Defendants GECRB, SQUARETWO, CACH and Does 7-10)

1. Injunctive relief (Cal. Bus. & Prof. Code § 17203);

2. Disgorgement (*id.*);

3. Restitution (*id.*);

4. "[S]uch orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition." (*id.*);

5. Costs of litigation (Cal. Code Civ. Proc. § 1032, subd. (b));

6. Reasonable attorneys' fees (Cal. Civ. Code § 1021.5); and

7. Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

\ \ \

FIRST AMENDED COMPLAINT      CASE NO. CV13-07231-GHK (RZx)

Dated:  February 27, 2014

Jonathan Weiss, SBN 143895
Email:  jw@lojw.com
LAW OFFICE OF JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436
Telephone:  (310) 558-0404
Facsimile:  (310) 558-0100

Michael N. Berke , SBN 81317
Email:  michael.berke@berkeslaw.com
LAW OFFICE OF MICHAEL N. BERKE
25001 The Old Road
Santa Clarita, California  91381-2252
Telephone:  (661) 259-1800
Facsimile:  (661) 259-1865

Scott C. Borison, SBN 289456
Email: borison@legglaw.com
LEGG LAW FIRM LLC
5500 Buckeystown Pike
Frederick, Maryland  21703-9403
Telephone:  (301) 620-1016
Facsimile:  (301) 620-1018


Attorneys for Plaintiff


/s/ _____
Jonathan Weiss

LAW OFFICE
JONATHAN WEISS
10576 Troon Avenue
Los Angeles, California  90064-4436

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZx)

# DANIELS NORELLI SCULLY & CECERE, P.C.

## Attorneys at Law

FRED G. DANIELS*
GEORGE H. NORELLI
JAMES P. SCULLY*
ROBERT J. CECERE*
ERIC T. TAVEL
DENISE MAY*
-----------------------------
Special Counsel
ALBERT F. PENNISI P.C.

One Old Country Road
Suite LL5
Carle Place, NY  11514
1-800-332-3306
516-338-7520

MEREDITH E. UNGER
MICHAEL R. MARGOLIS*
JOSHUA R. BRONSTEIN
IRA R. SITZER
ADAM S. MEISKIN
NOAH E. LEVENSON+
-----------------------------
Of Counsel to the Firm
ISAAC N. TUCHMAN
SHERRIE A. TAYLOR
-----------------------------
*Member NY & NJ Bar
+Member NY & MA Bar

August 8, 2013

James Elias
16209 Victory Blvd Unit 181
Van Nuys, CA 91406

**Re:** CACH, LLC as assignee of GE MONEY BANK
**Account Number:** ███████0731
**Our Account Number: 120020017573**
BALANCE: $5,255.11

Dear Sir/Madam:

Please be advised that the above referenced account has a balance left to be paid of $5,255.11.

If you have any questions, or need anything further, please do not hesitate to contact this office.

Very Truly Yours,

Joshua R. Bronstein, Esq.

This communication is from a debt collector.  It is an attempt to collect a debt and any information obtained shall be used for that purpose.

## Exhibit A

### PAGE 26 OF 26

FIRST AMENDED COMPLAINT                    CASE NO. CV13-07231-GHK (RZx)